[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Richman Properties, L.L.C. v. Medina Cty. Bd. of Revision*, Slip Opinion No. 2014-Ohio-2439.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-2439

RICHMAN PROPERTIES, L.L.C., APPELLEE, *v.* MEDINA COUNTY BOARD OF REVISION ET AL., APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Richman Properties, L.L.C. v. Medina Cty. Bd. of Revision*, Slip Opinion No. 2014-Ohio-2439.]**

*Taxation—Real-property valuation—Reversible error not shown with respect to unauthorized practice of law at the Board of Tax Appeals' hearing—Subdivision of parcels determined to be a factor "that would, by changing with the passage of time, affect the value of the property"—Presumption of recency of sale rebutted—Board of Tax Appeals' decision reversed and cause remanded.*

(No. 2013-0386—Submitted February 25, 2014—Decided June 11, 2014.)

APPEAL from the Board of Tax Appeals, No. 2009-W-2607.

_____

**Per Curiam.**

{¶ 1} The Medina County auditor and the Medina County Board of Revision ("BOR") appeal from a decision of the Board of Tax Appeals ("BTA"),

in which the BTA reversed the tax-year-2008 valuation adopted by the BOR for four parcels. The BTA held that the sale price from a June 2006 transaction, $135,000, was the best evidence of value of the four parcels on January 1, 2008, which was the tax-lien date for tax year 2008. The BTA did so in spite of the fact that the current *four* parcels had been *two* distinct parcels at the time of the sale. Although it determined that the sale price was indicative of value, the BTA remanded to the BOR for the allocation of that sale price to the four parcels.

{¶ 2} On appeal, the auditor and the BOR (collectively, "the county") raise two arguments. First, the county contends that the owner's nonlawyer representative engaged in the unauthorized practice of law at the BTA hearing and that the BTA erred in overruling a motion in limine and various objections to that conduct. We reject this basis for the county's appeal because the county has not shown that these rulings resulted in reversible error.

{¶ 3} Second, the county argues that the "purchase of these properties was not recent to the 2008 tax lien date because [Richman Properties, L.L.C.] changed the character of the property when it split the two improved parcels into four total parcels." We agree, and we therefore reverse the BTA's decision. We also remand with the instruction that the BTA reinstate the BOR's valuations, with one exception, which is noted below.

### Facts

{¶ 4} Larry and Patrick Bush acquired the properties at issue in June 2006 through the purchase of what then constituted two parcels, parcel No. 04-09C-21-005 and parcel No. 04-09C-27-010. They paid $135,000. On one parcel was an unfinished brick house; on the other an unfinished frame house.

{¶ 5} For tax year 2006, the auditor apparently had valued the two parcels at a total of $328,910; however, based on complaints filed by the new property owner, Richman Properties, L.L.C. (a business entity of the Bushes), the aggregate valuation for the two parcels was reduced to $135,000.

**{¶ 6}** In Medina County, 2007 was a reappraisal year, and the auditor set an aggregate valuation for the two parcels at $141,740—a 5 percent increase in valuation for the reappraisal year over the sale-price value determined for tax year 2006. In December 2007, the two parcels were subdivided, so that the same land constituted four parcels for tax purposes in tax year 2008, given that the 2008 valuation determines value as of January 1, 2008. While testifying at the BTA hearing about dividing the two parcels into four, Patrick Bush stated that "dividing [the parcels] up we thought would make it worth more money; it didn't necessarily work out that way."

**{¶ 7}** The county auditor assigned an aggregate value of $468,470 to the four parcels for tax year 2008.[1] That represented a significant increase over the aggregate valuation of the two ancestor parcels at $141,740 for tax year 2007. Richman Properties, through its member/president Patrick Bush, filed complaints for the four parcels, seeking reductions based on the 2006 sale—although the aggregate valuation sought after the requested reductions was $141,740 rather than $135,000, reflecting Bush's acceptance of the aggregate 2007 reappraisal result.

**{¶ 8}** The BOR held a hearing on August 25, 2009.[2] The testimony of the auditor's witness was offered to support the auditor's revaluation by presenting 15 comparable sales of both improved properties and vacant lots, plus four land sales, to bolster the values assigned to the newly subdivided parcels. The summary sheet of the comparables associated particular comparables with particular subject parcels. In each case, the price-per-square-foot or price-per-acre assigned by the auditor to the subject parcel fell well below the median and

---

[1] The complaints identify 2007 as the relevant tax year, but they were filed in March 2009 and were therefore properly reviewed as challenges to the valuation for tax year 2008 instead.

[2] As the BTA noted in its decision, much of the audio recording of the BOR hearing is inaudible due to an equipment malfunction.

the mean for the data set.  The comparable sales all occurred within the period of three years prior to the January 1, 2008 tax-lien date.

**{¶ 9}**   At the BOR hearing, Patrick Bush appeared for the owner and argued among other things that the residences on the two improved parcels were not complete.  A field check confirmed their unfinished status.  The BOR ordered reductions for the two improved properties to account for the unfinished state of the buildings:   for parcel No. 04-09C-21-024, the reduction was based on the building's being 55 percent complete; for parcel No. 04-09C-27-015, the reduction was based on the building's being 60 percent complete.[3]   As for the unbuilt lots, the auditor's values were retained.  Based on the BOR's actions, the aggregate valuation of the four parcels changed from $468,470 to $383,180.

**{¶ 10}** Richman Properties appealed to the BTA, seeking to compel the county to allocate the 2006 sale price of $135,000 among the four parcels.  At the BTA hearing, Patrick Bush again appeared as president and as a member of the limited-liability company, and he testified on its behalf.

**{¶ 11}** Before the BTA hearing, the county filed a motion in limine asking the BTA to "issue an order precluding Patrick Bush, an Agent-Officer of Richman Properties, L.L.C., but not an attorney, from making legal arguments, examining witnesses or undertaking any other tasks that can be [performed] only by an attorney."   Also, at the BTA hearing, the county repeatedly objected to Bush's

---

[3] For parcel No. 04-09C-21-024, the building value was reduced to 55 percent of completion value, consistent with the completion percentage; but for parcel No. 04-09C-27-015, the building value was set at 78 percent instead of 60 percent.  The reason apparently lies in the owner's having listed the property for sale at $199,000, but no explanation was offered as to why the listing price should be deemed indicative of value.  By contrast, the requirement to adjust for the unfinished state of an improvement is stated in absolute terms.  Ohio Adm.Code 5703-25-06(G) ("If a building, structure, fixture or other improvement to land is under construction on January first of any year, its valuation *shall* be based upon its value or percentage of completion as it existed on January first" [emphasis added]).  Thus, on remand, the improvement portion of the value of parcel No. 04-09C-27-015 should be reduced to 60 percent of completion value, consistent with the explicit finding by the BOR.  *See Ace Steel Baling, Inc. v. Porterfield*, 19 Ohio St.2d 137, 142, 249 N.E.2d 892 (1969) (when the "findings of the agency * * * contradict its conclusion, * * * the latter must fall and the findings must prevail").

presenting legal arguments and cross-examining the county's witness. The BTA formally overruled the motion and objections in its decision.

{¶ 12} At the BTA hearing, Bush testified regarding the parcels, mostly in response to questions posed by the BTA examiner or on cross-examination by the county's attorney. In particular, Bush recited the history of acquiring the property in 2006 and of filing complaints to have the sale price of $135,000 used to set the value for tax year 2006. Bush did not know whether the 5 percent increase in valuation for tax year 2007 "made sense, but it seemed reasonable." But Bush objected to the aggregate valuation for the four parcels nearly tripling in tax year 2008.

{¶ 13} On cross-examination, Bush testified that he had seen a for-sale sign on the property before the 2006 purchase and that he thought that it had been listed for sale with the local multiple-listing service. Bush did not know of any relationship between his brother (and partner) Larry Bush and the realtor. Bush testified that although some work was done on the houses, they were not in a finished state. Bush further testified that the two unimproved lots were not buildable in 2008, but the county presented August 2008 real-estate listings indicating that the lots were buildable.

{¶ 14} The county's witness explained that the BOR had reduced the value of the improvements because a field check had shown that the houses were unfinished. The county's witness also referred to a 2006 real-estate-listing document in an attempt to establish that the properties at issue had not been listed for sale through the multiple-listing service. This evidence was meant to support the county's contention that the 2006 sale was not an arm's-length sale.

{¶ 15} Although Bush was permitted to cross-examine the county's witness, that colloquy often strayed into dueling comments.

{¶ 16} The county's attorney urged the BTA to find that the 2006 sale was not at arm's length, primarily because it was not an open-market sale. This

argument was advanced in spite of the fact that the county had been willing to use the sale price to value the two parcels for tax year 2006 and had also used the sale price as a baseline to calculate the percentage increase for tax year 2007.

{¶ 17} The BTA issued its decision on February 7, 2013. The BTA noted that the burden was on Richman Properties as appellant to prove a decrease in value, and it cited cases establishing that a recent arm's-length sale is the best evidence of value. The BTA also noted the "rebuttable presumption" that a sale should be used to value the property and then, quoting *Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 13, examined whether the " 'elements of recency and arm's-length character between a willing seller and a willing buyer' " had been rebutted. BTA No. 2009-W-2607, 2013 WL 602518, *2-3. With respect to the arm's-length character of the sale, the BTA determined that the county "failed to come forward with competent and probative evidence" that would negate the arm's-length character of the 2006 transaction. *Id*. at *3. As for recency, the BTA noted that the issue is not determined solely in terms of temporal proximity of the sale to the lien date, and it concluded that the passage of time was not sufficient to make the sale too remote. *Id*. In the last paragraph of the opinion, the BTA noted that "because the character of the subject properties had changed since the [2006 transfer], i.e. the two parcels that were the subject of the transfer have since been subdivided into four parcels, we are unable to allocate the purchase price between the subject properties." *Id*. The BTA remanded the case to the BOR with the instruction that the allocation be performed.

{¶ 18} The county has appealed. No brief has been filed and no argument presented on behalf of the appellee property owner in this appeal.

## Analysis

{¶ 19} The county advances two propositions of law. In the first, the county challenges the BTA's overruling its motion in limine and its objections at

the hearing in relation to the unauthorized practice of law by the owner's nonlawyer representative, Patrick Bush. In the second, the county challenges the BTA's determination that the presumption of recency was unrebutted, given that the subdivision of the property constituted a change in character likely to affect value.

*1. The county has not shown reversible error with respect to the unauthorized practice of law at the BTA hearing*

{¶ 20} Relying on *Dayton Supply & Tool Co., Inc. v. Montgomery Cty. Bd. of Revision*, 111 Ohio St.3d 367, 2006-Ohio-5852, 856 N.E.2d 926, the county asserts that Bush, a nonlawyer, engaged in the unauthorized practice of law at the BTA hearing. The county places heavy reliance on *Dayton Supply's* pronouncement that a nonlawyer may prepare and file a complaint with the BOR and "present[ ] the claimed value of the property," but may not "make legal arguments, examine witnesses, or undertake any other tasks that can be performed only by an attorney." *Id*. at syllabus. The line between "presenting the claimed value" (here the 2006 sale price) and making legal arguments may be thin, but there can be no question that Bush cross-examined the county's witness and thereby likely violated the limitation set forth in *Dayton Supply*.

{¶ 21} Notably, the county has not asserted that the filing of Richman Properties' original complaint by the nonlawyer Bush, or Bush's apparent filing of the notice of appeal from the BOR to the BTA, constitutes grounds for dismissal of either the complaint or the appeal. Bush is a member of the limited-liability company that owns the property and is its president.

{¶ 22} Applying a previous version of R.C. 5715.19, we held in 1997 that only lawyers were statutorily authorized to prepare and file complaints on behalf of corporate property owners, with the result that complaints that had been prepared and filed by nonlawyers failed to invoke the jurisdiction of the boards of revision. *See Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of*

*Revision*, 134 Ohio St.3d 529, 2012-Ohio-5680, 983 N.E.2d 1285, ¶ 13-14, explaining the reasoning underlying *Sharon Village Ltd. v. Licking Cty. Bd. of Revision*, 78 Ohio St.3d 479, 678 N.E.2d 932 (1997).  But the amendment to R.C. 5715.19(A), which became effective in 1999, specified that certain persons may file valuation complaints on behalf of corporate owners, and those persons include an "officer" or a "member" of a limited-liability company.  Sub.H.B. No. 694, 147 Ohio Laws, Part III, 5373, 5374.  Since the enactment of H.B. 694, we have upheld the legislative authorization of nonlawyers to initiate valuation cases in a number of situations.  *See Dayton Supply*, 111 Ohio St.3d 367, 2006-Ohio-5852, 856 N.E.2d 926 (corporate officer filing on behalf of corporation); *Columbus City School Dist.* (spouse filing on behalf of spouse); *Marysville Exempted Village School Dist. Bd. of Edn. v. Union Cty. Bd. of Revision*, 136 Ohio St.3d 146, 2013-Ohio-3077, 991 N.E.2d 1134 (corporate employee filing on behalf of corporation).

{¶ 23} Obviously, the holding of *Dayton Supply* authorized Bush to file the complaint in his capacity as president.  Beyond that, we see no reason why the authorization of a member of a limited-liability company to file on behalf of the limited-liability company is any less valid, nor has the county contended that it is.

{¶ 24} As for the notice of appeal to the BTA, R.C. 5717.01 authorizes appeal to the BTA from the BOR "by * * * any * * * taxpayer authorized by section 5715.19 of the Revised Code to file complaints against valuation or assessments with the auditor."  Considered in light of the 1999 amendment of R.C. 5715.19(A), R.C. 5717.01's language gives no reason to doubt that the General Assembly's authorization of members of a limited-liability company to file on behalf of the limited-liability company extends to the filing of an appeal to the BTA.

{¶ 25} We have noted that Bush's cross-examination does appear to have crossed the line at times into the unauthorized practice of law.  The county's

argument makes a long leap, however, in contending that this violation of *Dayton Supply*'s precepts constitutes reversible error on appeal. Pursuant to R.C. 5717.04, our duty is to conduct a "hearing and consideration of [the] record and evidence" in order to decide whether the BTA's decision is "reasonable and lawful," in which case we "shall affirm the same." Our power to reverse must rest upon a finding that the BTA's decision is unreasonable or unlawful. *Id.* Thus, the county's burden is to show that actions taken at the hearing render *the decision itself* unreasonable or unlawful; nothing in R.C. 5717.04 provides for reversing on procedural grounds apart from such a finding.

{¶ 26} The only case the county cites is *Dayton Supply*, 111 Ohio St.3d 367, 2006-Ohio-5852, 856 N.E.2d 926. As noted, that case holds that a corporate officer may file on behalf of a corporate property owner. *Id.* at syllabus. We had no occasion in that case to consider whether a nonlawyer's examination of witnesses at the hearing required reversal of the BTA's substantive decision. Moreover, we have rejected the contention that an instance of the unauthorized practice of law during the BTA hearing must necessarily affect the BTA's jurisdiction over the case. *See Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 127 Ohio St.3d 63, 2010-Ohio-4907, 936 N.E.2d 489, ¶ 16.

{¶ 27} Quite simply, the county has cited no authority showing that when a nonlawyer's examination of a witness has been permitted over objection, the error is correctible through reversing the decision on appeal. To be sure, courts have struck or disregarded pleadings and petitions filed on behalf of corporate entities by nonlawyers, thereby subjecting the corporate party to the consequences of not having filed such documents. *See, e.g., Union Sav. Assn. v. Home Owners Aid, Inc.*, 23 Ohio St.2d 60, 262 N.E.2d 558 (1970). But the effect of a nonlawyer's examination of a witness on the outcome of an administrative proceeding is not so clear.

**{¶ 28}** Normally, an appellant must be aggrieved by an error below in order to obtain relief on appeal. *See Dayton-Montgomery Cty. Port Auth. v. Montgomery Cty. Bd. of Revision,* 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22, ¶ 32-33; *accord Newman v. Levin*, 116 Ohio St.3d 1205, 2007-Ohio-5507, 876 N.E.2d 960, ¶ 3. The county's bare assertion that error occurred does not establish that Bush's examination of the county's witness swayed the result against the county. Indeed, the BTA's determination relied heavily on its recitation of the legal presumption that the sale was recent and at arm's length.

**{¶ 29}** Ultimately, we reject the county's first proposition of law because the assertion has been inadequately supported as a ground for reversal on appeal. *See In re Application of Columbus S. Power Co.*, 129 Ohio St.3d 271, 2011-Ohio-2638, 951 N.E.2d 751, ¶ 19 ("it is not generally the proper role of this court to develop a party's arguments"); *Util. Serv. Partners, Inc. v. Pub. Util. Comm.*, 124 Ohio St.3d 284, 2009-Ohio-6764, 921 N.E.2d 1038, ¶ 53 (an appellant "effectively" waives an argument when "[n]o argument is supplied regarding whether the relevant case law, applied to the facts of [the] case, justifies a decision in [the appellant's] favor"). But nothing in our discussion of this issue should be understood to condone the unauthorized practice of law. We adhere to the settled precept that "[l]itigation must be projected * * * according to established practice by lawyers who are of high character, skilled in the profession, dedicated to the interest of their clients, and in the spirit of public service." *Union Sav. Assn.*, 23 Ohio St.2d at 64, 262 N.E.2d 558. Concomitantly, "limiting the practice of law to licensed attorneys is generally necessary to protect the public against incompetence, divided loyalties, and other attendant evils that are often associated with unskilled representation." *Cleveland Bar Assn. v. CompManagement, Inc.*, 104 Ohio St.3d 168, 2004-Ohio-6506, 818 N.E.2d 1181, ¶ 40. We hold only that the county in this case has failed to establish grounds for reversing the BTA's decision under its first proposition of law.

*2. The subdivision of parcels changed the character of the property and therefore constituted a factor that affected the value of the property*

{¶ 30} The county's second proposition of law argues that the BTA erred by using the two-year-old sale price in spite of the BTA's acknowledgment that the character of the property had changed since the sale. According to the county, the "purchase of these properties was not recent to the 2008 tax lien date because [Richman Properties] changed the character of the property when it split the two improved parcels into four total parcels." We agree with this assertion.

{¶ 31} The BTA held that the presumption in favor of using the 2006 sale price required that the price be viewed as determinative of the value of the four parcels as of January 1, 2008. The BTA's decision reflects the doctrine that "a sale price is deemed to be the value of the property, and the only rebuttal lies in challenging whether the elements of recency and arm's-length character between a willing seller and a willing buyer are genuinely present for that particular sale." *Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 13. As for recency, that element "encompasses all factors that would, by changing with the passage of time, affect the value of the property." *Id*. at ¶ 35.

{¶ 32} With respect to whether the sale was "recent" to the tax-lien date, the BTA confined its review to the observation that "the mere passage of some months between sale and tax lien dates is not sufficient cause to disregard a sale." BTA No. 2009-W-2607, 2013 WL 602518, at *3. Although two paragraphs later the BTA itself characterized the subdivision of the property into four parcels as a change in the character of the property, the BTA nonetheless held that the recency presumption was intact. On this record, that conclusion was unreasonable and unlawful.

{¶ 33} The situation in this case requires us to apply the standard stated in *Cummins*. Specifically, the question arises whether subdividing the two parcels

into four in December 2007 constituted a factor that, "by changing with the passage of time, affect[ed] the value of the property" pursuant to ¶ 35 of *Cummins*. We conclude that the record in the present case shows that the subdivision of parcels did constitute such a factor, given (1) that Bush's testimony showed that increasing the value was the intent of the split and (2) the comparable-sales evidence presented by the auditor to support a higher valuation for the subdivided parcels.

{¶ 34} Accordingly, we hold that on this record, the presumption of recency was rebutted and that Richman Properties failed to meet its burden of showing the continued propriety of using the 2006 sale price to value the property. We therefore reverse the decision of the BTA, and we remand to the BTA with the instruction that the BOR's valuation be reinstated, with the exception noted in footnote three of this opinion.[4]

Decision reversed
and cause remanded.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

————————————

[4] When we issue a clarification of the law that removes a presumption or otherwise shifts the burden of proof, we ordinarily afford the party that had relied on the presumption the opportunity to present additional evidence by remanding the cause. *See AERC Saw Mill Village, Inc. v. Franklin Cty. Bd. of Revision*, 127 Ohio St.3d 44, 2010-Ohio-4468, 936 N.E.2d 472, ¶ 37-38; *Akron City School Dist. Bd. of Edn. v. Summit Cty. Bd. of Revision*, ___ Ohio St.3d ___, 2014-Ohio-1588, ___ N.E.3d ___, ¶ 29. But this case does not fall within that category. Here, *Cummins* was already one year and four months old at the time of the August 25, 2009 hearing before the BOR. Accordingly, the property owner was on notice that recency involves "all factors that would, by changing with the passage of time, affect the value of the property," *Cummins*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, at ¶ 35, and Bush's testimony shows that the owner appreciated the possible effect of subdividing the parcels on property value. Under these circumstances, we do not regard the holding of this case to be an innovation of the law that requires a remand.

**O'NEILL, J., concurring.**

{¶ 35} I agree with the majority's disposition of both the procedural and the substantive issues in this case. I write separately to emphasize that the unauthorized practice of law that occurred in this case is a very serious matter and that those who preside over administrative hearings should not permit it to occur.

{¶ 36} This court has taken pains to exercise its constitutional authority to limit the practice of law to licensed professionals while remaining cognizant of our "concomitant responsibility * * * not [to] exercise[e] this authority so rigidly that the public good suffers." *Henize v. Giles*, 22 Ohio St.3d 213, 217, 490 N.E.2d 585 (1986). The accommodation we have struck permits the legislature and administrative agencies some leeway, but essential to that accommodation is the "concomitant responsibility" of the other branches of Ohio government to enforce the boundaries defined by this court.

{¶ 37} An examination of the circumstances in this case reveals that a clearly defined boundary was ignored. An officer and member of a limited-liability company who is not a lawyer filed the valuation complaint and appeared at the hearing before the Board of Tax Appeals to present the case for the limited-liability company, which was the taxpayer. Our case law could not be clearer concerning what a person in that position may and may not do, consistent with the prohibition against the unauthorized practice of law. Patrick Bush was permitted, pursuant to R.C. 5715.19(A)(1), to prepare and file the complaint on behalf of the limited-liability company. He was also entitled to present facts as a witness and to state the taxpayer's claimed property value. *Dayton Supply & Tool Co., Inc. v. Montgomery Cty. Bd. of Revision*, 111 Ohio St.3d 367, 2006-Ohio-5852, 856 N.E.2d 926, syllabus. What Bush was not permitted to do was "make legal arguments" or "examine witnesses." *Id.*

{¶ 38} The line between presenting the claimed value of the property and making legal arguments may at times be thin, but in this case Bush definitely

transgressed a clear boundary when he cross-examined the county's witness. Before the hearing had started, the county drew the attention of the BTA's attorney examiner to the prospective unauthorized practice of law by filing a motion in limine; at the hearing the county's lawyer repeatedly objected to the unauthorized practice of law. Unaccountably, the motion and the objections were all overruled.

{¶ 39} Ohio attorneys are obligated to avoid assisting other persons in engaging in the unauthorized practice of law. Prof.Cond.R. 5.5(a). The attorney examiner in this case should have recognized and enforced the boundaries of nonlawyer conduct. That she did not points to the need for greater attention to this issue by administrative bodies and for a tightening of procedures.

{¶ 40} For example, even after their most recent update, the BTA's rules continue to state that "a person may appear and act on behalf of a partnership, limited liability company, or association of which he or she is a member or on behalf of any corporation for which he or she is an officer if such partnership, limited liability company, association, or corporation is a party to the appeal," without any qualification as to what that appearance and action may and may not consist of. Ohio Adm.Code 5717-1-02(A). In this case, the laxness of the rule may have contributed to the undue latitude afforded at the hearing. I urge the BTA and other administrative agencies to take all reasonable steps to assure that the unauthorized practice of law does not occur in the proceedings that they conduct.

{¶ 41} From a public-policy standpoint, the proscriptions on the unauthorized practice of law are clearly designed to protect the unsuspecting "clients" of would-be lawyers. As demonstrated by the case before us, BTA cases are sophisticated proceedings, full of legal traps for the unwary, in which millions of dollars of tax money are potentially at stake. This is not small claims court. The tax base of a community and the economic viability of a corporation's bottom

line can be significantly impacted and it is essential that the rule of law prevail. To permit a person with no legal training to present legal arguments, conduct cross-examination, and perform as a counselor in such a setting is a very serious matter indeed.

LANZINGER, J., concurs in the foregoing opinion.

_____

Dean Holman, Medina County Prosecuting Attorney, and Nathan E. Carnes, Assistant Prosecuting Attorney, for appellants.

_____