[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Hilliard City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision,* Slip Opinion No. 2018-Ohio-2046.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-2046

HILLIARD CITY SCHOOLS BOARD OF EDUCATION, APPELLEE, *v*. FRANKLIN COUNTY BOARD OF REVISION ET AL., APPELLEES; UTSI FINANCE, INC., APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Hilliard City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision,* Slip Opinion No. 2018-Ohio-2046.]**

*Real-property valuation—Property owner failed to negate presumption of recency of sale—Date of sale is the date that real-property conveyance-fee statement is filed in auditor's office—Board of Tax Appeals' decision affirmed.*

(No. 2015-1861—Submitted January 23, 2018—Decided May 31, 2018.)

APPEAL from the Board of Tax Appeals, Nos. 2014-3748 and 2014-3749.

_____

**Per Curiam.**

{¶ 1} In this real-property-valuation case, appellant, UTSI Finance, Inc. ("UTSI"), appeals a Board of Tax Appeals ("BTA") decision that valued UTSI's property in accordance with a sale price. In assigning this value, the BTA

determined that UTSI's appraisal evidence did not negate the presumption that the sale was characteristic of true value. Because we conclude that the BTA's decision is reasonable and lawful, we affirm it.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} The subject property consists of two parcels located on the west side of Columbus. The first parcel consists of 3.160 acres of unimproved land. The second parcel consists of 24.710 acres, part of which is improved with a 9,600-square-foot industrial warehouse used for servicing semitrailers. For tax year 2011, the Franklin County auditor valued the first parcel at $132,700 and the second parcel at $1,717,300, for a total valuation of $1,850,000. Appellee Hilliard City Schools Board of Education ("BOE") and UTSI each filed original and countercomplaints against these tax-year-2011 valuations, and the two cases were consolidated for a hearing before the Franklin County Board of Revision ("BOR").

### A. BOR proceedings

{¶ 3} At the BOR hearing, the BOE presented a quitclaim deed memorializing a transfer of the subject property from Lakeshore Ventures, L.L.C., to Universal Truckload Services, Inc. The deed was signed and notarized in September 2002, but it bears a stamp from the auditor's office dated March 2009. The BOE also presented the conveyance-fee statement associated with this transfer, showing that the subject property sold for $2,313,489. The statement was filed with the auditor's office in March 2009. Relying on these two documents, the BOE argued that the subject property should be valued according to the sale price.

{¶ 4} As additional support, the BOE provided copies of the BOR's decision that assigned a value of $2,313,500 to the subject property for tax year 2009. The BOE asserted that during the tax-year-2009 proceedings, the BOR determined that the sale was arm's length in nature, and thus, it insisted, UTSI was barred from contesting the arm's-length nature of the transaction during the tax-year-2011 proceedings.

**{¶ 5}** For its part, UTSI presented the testimony of Kelly Fried, a certified appraiser whose qualifications were stipulated to by the BOE. Fried appraised only the second parcel (the one improved with the industrial warehouse) as of the January 1, 2011 tax-lien date, relying on both a sales-comparison and an income approach to value to arrive at a reconciled valuation of $1,470,000.

**{¶ 6}** Fried commented on market trends, observing that "there appears to be limited demand for similar [properties] at the time of value as there appears to be an excess supply of space in this area." More specifically, she wrote that "demand for real property peaked around 2006 and then began to decline from late 2007 until leveling off in late 2011/early 2012 due to economic conditions." During this decline, she observed, vacancy rates started to trend upward.

**{¶ 7}** Fried's appraisal report additionally noted:

> The property last transferred in March 3, 2009 from Lakeshore Ventures LLC to Universal Truckload for $2.3 million in a sale that the owner reported to be between related entities. The majority owner of UTSI also owns Lakeshore Ventures. There was an additional transfer in 2009 from Universal Truckload to UTSI for no consideration in what was considered to be a non-arm's-length transfer.

Fried elaborated on this passage by testifying that the commonality between the "related entities" was based on their relationship to "Crown Enterprises." Fried never identified the name of the "owner" who had reported to her that the sale was between related entities, nor did this owner testify. The BOE raised a hearsay objection to Fried's reliance on her conversation with the owner, but the BOR permitted her to testify on this topic.

**{¶ 8}** Fried stated that the owner had told her that the March 2009 sale included more than just realty. But Fried did not specify what the nonrealty items may have been.

**{¶ 9}** The BOR assigned a total value to the subject property of $1,602,700 for tax years 2011, 2012, and 2013. For the first parcel, the BOR retained the auditor's valuation of $132,700. For the second parcel, it assigned Fried's opined value of $1,470,000. The BOR rejected the BOE's argument that the March 2009 sale price established the subject property's value, explaining that changes in market conditions rendered the sale too remote.

## B. BTA proceedings

**{¶ 10}** The BOE appealed to the BTA, which heard the case on the record developed before the BOR and on briefs filed by the BOE and UTSI. The BTA determined that the subject property's value should be $2,313,490 for tax years 2011, 2012, and 2013. Although the BTA rejected the BOE's argument that UTSI was collaterally estopped from contesting the sale's arm's-length nature, the BTA nevertheless found that the sale price presumptively established the subject property's value and that UTSI had failed to rebut that presumption by showing that the sale was not a recent arm's-length transaction. The BTA held that it could not rely on Fried's statement that the sale was between related parties, because in its view, that statement was hearsay. The BTA rejected UTSI's argument that the sale took effect in September 2002, ruling instead that the sale took effect for *real-property-valuation purposes* in March 2009, the date the conveyance-fee statement was filed. And the BTA rejected Fried's analysis of changed market conditions as empirically unsupported. UTSI then filed this appeal.

## II. STANDARD OF REVIEW

**{¶ 11}** We will affirm a BTA decision that is reasonable and lawful. *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14. We review de novo the BTA's resolution of legal issues but will defer to the BTA's findings

4

concerning the weight of the evidence if there is evidence in the record to support them. *Lunn v. Lorain Cty. Bd. of Revision*, 149 Ohio St.3d 137, 2016-Ohio-8075, 73 N.E.3d 486, ¶ 13.

### III. DISCUSSION

{¶ 12} We begin with well-established principles. The price from a recent arm's-length sale presumptively establishes a property's true value pursuant to former R.C. 5713.03, Am.Sub.H.B. No. 260, 140 Ohio Laws, Part II, 2665, 2722.[1] *E.g., Utt v. Lorain Cty. Bd. of Revision*, 150 Ohio St.3d 119, 2016-Ohio-8402, 79 N.E.3d 536, ¶ 9. To benefit from this presumption, the proponent need only meet a relatively light initial burden to show that the "sale on its face appears to be recent and at arm's length." *Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 41. The proponent can make this showing by furnishing " 'basic documentation of a sale.' " *Utt* at ¶ 13, quoting *FirstCal Indus. 2 Acquisitions, L.L.C. v. Franklin Cty. Bd. of Revision*, 125 Ohio St.3d 485, 2010-Ohio-1921, 929 N.E.2d 426, ¶ 24. When, for example, the proponent provides a deed and conveyance-fee statement, this requirement is met and the presumption arises. *See Dauch v. Erie Cty. Bd. of Revision*, 149 Ohio St.3d 691, 2017-Ohio-1412, 77 N.E.3d 943, ¶ 17.

---

[1] For tax years 2011 and 2012, R.C. 5713.03 provided that "the auditor *shall* consider the sale price" in valuing the property for tax purposes. (Emphasis added.) Am.Sub.H.B. No. 260 ("H.B. 260"), 140 Ohio Laws, Part II, at 2722. For tax year 2013, however, R.C. 5713.03 provided that "the auditor *may* consider the sale price" in valuing the property for tax purposes. (Emphasis added.) 2012 Am.Sub.H.B. No. 487 ("H.B. 487"); *Terraza 8, L.L.C. v. Franklin Cty. Bd. of Revision*, 150 Ohio St.3d 527, 2017-Ohio-4415, 83 N.E.3d 916, ¶ 18 (holding that H.B. 487 applies to valuations for tax year 2013). Here, the complaints were filed for tax year 2011 (a reappraisal year in Franklin County) and both the BOR and the BTA applied their determinations of value to tax years 2011, 2012, and 2013. While the inclusion of tax year 2013 might suggest that the analysis should change to account for the amendment to R.C. 5713.03, no party argues that the H.B. 487 version applies here. And nothing in *Terraza* requires that R.C. 5713.03 be applied in a piecemeal fashion when a complaint is filed for a tax year subject to H.B. 260 and the value for that tax year is carried forward to a later tax year governed by H.B. 487. We accordingly apply the H.B. 260 version, with its mandatory "shall," to the issues raised herein.

**{¶ 13}** After the presumption arises, the opponent may rebut it only by showing that the sale was either not recent or not at arm's length. *Cummins* at ¶ 13. An appraiser's opinion of value is not enough on its own to overcome the validity of a sale price. *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 146 Ohio St.3d 470, 2016-Ohio-757, 58 N.E.3d 1126, ¶ 20 ("*Buckeye Hospitality*"). But an opponent is permitted to rebut the presumed recency and arm's-length nature of a sale by "rely[ing] on information contained in an appraisal report and an appraiser's testimony." *Id.* at ¶ 19. With these principles in mind, we now take up the parties' contentions.

### A. The BOE did not preserve its collateral-estoppel argument

**{¶ 14}** The BOE asserts as a threshold matter that collateral estoppel precludes UTSI from contesting the arm's-length nature of the sale because, the BOE insists, the BOR previously determined in a tax-year-2009 proceeding that the sale was at arm's length. But the BTA rejected this argument below and the BOE, as appellee herein, did not file a cross-appeal to preserve it. "[T]he case law establishes that when the BTA has made an actual finding adverse to a party, 'it [is] imperative that that finding be affirmatively challenged as error' through a cross appeal in order to preserve jurisdiction over the issue." (Second set of brackets sic.) *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 151 Ohio St.3d 100, 2017-Ohio-7578, 86 N.E.3d 301, ¶ 32, quoting *Internatl. Paper Co. v. Testa*, 150 Ohio St.3d 348, 2016-Ohio-7454, 81 N.E.3d 1225, ¶ 31. Applying this principle, we conclude that the BOE's failure to file a cross-appeal deprives us of jurisdiction to consider the collateral-estoppel issue.

### B. UTSI bore the burden of proof before the BTA

**{¶ 15}** UTSI maintains that because it prevailed before the BOR, the burden of proof shifted to the BOE to present competent and probative evidence to make its case at the BTA. Because the BOE did not put on any new evidence to establish that the transfer qualified as a recent arm's-length sale, UTSI reasons, the BOE

failed to meet its burden and the BTA acted unreasonably and unlawfully in concluding otherwise.

{¶ 16} The appellant at the BTA ordinarily bears the burden to prove a value that differs from the one found by a board of revision. *N. Royalton City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 129 Ohio St.3d 172, 2011-Ohio-3092, 950 N.E.2d 955, ¶ 15. But "when the issue is whether a proffered sale price should be used to value the property, the burden at the BTA is usually on the same party who bore that burden at the BOR: the opponent of using the sale price." *Id.* And "[t]hat burden does not shift at the BTA even if the BOR decided not to use the sale price as the criterion of value." *Id.* at ¶ 16.

{¶ 17} That precept defeats UTSI's burden-shifting argument. The BOE's position here is that the deed and conveyance-fee statement established the sale price as the true value of the subject property, and the BTA correctly found that this evidence sufficed to meet the BOE's relatively light initial burden of showing the existence of a qualifying sale. *See Dauch*, 149 Ohio St.3d 691, 2017-Ohio-1412, 77 N.E.3d 943, at ¶ 17. UTSI thus bore the burden at the BTA to negate the sale price as the criterion of value by showing that the sale was either not recent or not an arm's-length transaction, issues to which we now turn.

### C. UTSI did not negate the presumption of recency

{¶ 18} In its first proposition of law, UTSI makes a two-pronged argument that the sale was not recent. First, it asserts that the sale was too remote from the 2011 tax-lien date, emphasizing the September 2002 signature and notarization on the quitclaim deed that memorialized the subject property's transfer from Lakeshore Ventures to Universal Truckload Services. Second, it insists that Fried's appraisal report contains evidence of changed market conditions.

### 1. Temporal proximity

{¶ 19} Recency "encompasses all factors that would, by changing with the passage of time, affect the value of the property." *Cummins*, 117 Ohio St.3d 516,

2008-Ohio-1473, 885 N.E.2d 222, at ¶ 35. A proper factor to consider in the analysis is temporal proximity—that is, the elapsed time between the sale date and the tax-lien date. *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 124 Ohio St.3d 27, 2009-Ohio-5932, 918 N.E.2d 972, ¶ 32.

**{¶ 20}** To discern the amount of elapsed time, the effective date of the sale must be known. In *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 124 Ohio St.3d 481, 2010-Ohio-687, 923 N.E.2d 1144, we held that "[i]n determining the date a sale of property occurs, only for purposes of establishing the true value of property pursuant to R.C. 5713.03, the auditor should use the date that the real property conveyance-fee statement is filed in the auditor's office as the sale date of the property." *Id.* at paragraph two of the syllabus. It follows that in this case, the sale took effect for tax purposes in March 2009 because that is when the conveyance-fee statement was filed with the auditor's office.

**{¶ 21}** UTSI's contrary arguments that the sale took effect in September 2002 are not persuasive. First, UTSI's citations to the websites of the Michigan Secretary of State and the Ashtabula County Bar Association for their commentary on the effects of a notarized document are inadequate to overcome *HIN*'s directive because that commentary does not create binding rules of law that this court must follow.

**{¶ 22}** Second, UTSI emphasizes that *HIN* dealt with two sales whereas this case deals with one. That difference is immaterial. Whether a case involves one sale or multiple sales, *HIN*'s rule still instructs that a particular sale's effective date is determined by the date of the filing of the conveyance-fee statement. An open-ended standard that fixes the effective date of a sale based on the number of sales at issue would undermine the certainty that *HIN* established.

**{¶ 23}** Third, UTSI's reliance on *Akron City School Dist. Bd. of Edn. v. Summit Cty. Bd. of Revision*, 139 Ohio St.3d 92, 2014-Ohio-1588, 9 N.E.3d 1004, is misplaced. *Akron City School Dist.* held that a "sale that occurred more than 24

months before the lien date and that is reflected in the property record maintained by the county auditor or fiscal officer should not be presumed to be recent when a different value has been determined for that lien date as part of the six-year reappraisal." *Id.* at ¶ 26. But here, the March 2009 sale does not predate the January 1, 2011 tax-lien date by more than 24 months, and for that reason alone *Akron* is inapposite.

### 2. Changed market conditions

**{¶ 24}** Another factor bearing on the recency inquiry is whether market conditions have changed between the sale date and the tax-lien date. *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, 125 Ohio St.3d 103, 2010-Ohio-1040, 926 N.E.2d 302, ¶ 12. Here, the BTA found that Fried provided no empirical support "to show that the market in which the subject is located underwent such significant decline as to render the March 2009 sale remote from the tax lien date." BTA Nos. 2014-3748 and 2014-3749, 2015 WL 10985314, at *5 (Oct. 22, 2015). UTSI challenges that finding, claiming that it furnished ample evidence of changed market conditions.

**{¶ 25}** In evaluating UTSI's claims, "we do not sit as 'a super BTA or a trier of fact de novo.' " *RNG Properties, Ltd. v. Summit Cty. Bd. of Revision*, 140 Ohio St.3d 455, 2014-Ohio-4036, 19 N.E.3d 906, ¶ 18, quoting *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 17. The BTA is given "wide discretion in determining the weight to be given to the evidence and the credibility of the witnesses that come before it." *EOP-BP Tower* at ¶ 9. Absent an abuse of discretion, the BTA's evidentiary determinations will not be reversed. *Musto v. Lorain Cty. Bd. of Revision*, 148 Ohio St.3d 456, 2016-Ohio-8058, 71 N.E.3d 279, ¶ 33.

**{¶ 26}** In arguing that it had offered sufficient evidence of changed market conditions, UTSI first points to Fried's testimony from the BOR hearing. Fried noted that vacancy rates started to trend upward in early 2008 as a result of the

recession. She added that market values were in decline "from about 2008" to "late 2011, early 2012." But we do not find that the BTA abused its discretion in not relying on this information in determining value, because these statements do not specifically relate the conditions in March 2009 to conditions on the tax-lien date.

**{¶ 27}** UTSI next points to a list of sales that Fried accounted for in her sales-comparison approach. Fried considered two types of sales: transfers of unimproved properties that occurred in November 2007, December 2007, April 2008, and September 2010 and transfers of improved properties that occurred in April 2010, February 2011, August 2011, November 2011, June 2012, and December 2012. While Fried made adjustments to some of these sales to account for inferior market conditions, none of the sales occurred on or around March 2009.

**{¶ 28}** UTSI also cites a real-estate survey included within Fried's appraisal report that shows the trend of overall capitalization rates from the fourth quarter of 2005 through the third quarter of 2012. The survey, however, reflects trends at the national level and thus does not impugn the BTA's conclusion that UTSI failed to show that the *subject property's locale* underwent a significant decline from the sale date to the tax-lien date.

**{¶ 29}** Turning to the case law, UTSI relies on this court's lead opinion in *Health Care REIT, Inc. v. Cuyahoga Cty. Bd. of Revision*, 140 Ohio St. 30, 2014-Ohio-2574, 14 N.E.3d 1009. That opinion deferred to the BTA's finding that an October 2004 sale was not recent in relation to the tax-lien date of January 1, 2007, observing that "[u]nder [the] circumstances, it can hardly be said that the record lacks support for the BTA's conclusion, much less that there is a 'total absence of evidence' to support its findings." *Id.* at ¶ 27, quoting *HealthSouth Corp. v. Testa*, 132 Ohio St.3d 55, 2012-Ohio-1871, 969 N.E.2d 232, ¶ 14. Though that opinion's recency analysis evaluated several factors, UTSI attaches significance to the opinion's remark that "the BTA's finding is supported by record evidence of general market changes following the October 2004 sale." *Id.* at ¶ 25.

10

**{¶ 30}** The flaw with UTSI's argument is that it mistakes a fact-bound determination for a generally applicable rule of law. *See Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 144 Ohio St.3d 324, 2015-Ohio-3633, 43 N.E.3d 387, ¶ 39 ("*Sullivant Holdings*"). What we said in *Sullivant Holdings* about other precedent from this court applies here with regard to *Health Care REIT*: the lead opinion in *Health Care REIT* does not say that the BTA was correct in finding the sale remote; instead, it says that the BTA did not abuse its discretion in so finding. *Sullivant Holdings* at ¶ 39. It follows that *Health Care REIT* does not supply any legal precept to be applied in this case; instead, it simply illustrates the "deference we are required to afford factual determinations of the BTA that are supported by the record." *Buckeye Hospitality*, 146 Ohio St.3d 470, 2016-Ohio-757, 58 N.E.3d 1126, at ¶ 27.

**{¶ 31}** To be sure, another fact-finder may have viewed the evidence differently. But "whether we might have weighed the evidence differently from the Board of Tax Appeals if we had been making the original determination" is immaterial. *Jewel Cos., Inc. v. Porterfield*, 21 Ohio St.2d 97, 99, 255 N.E.2d 630 (1970). Our task is not to "reevaluate the evidence considered by the BTA or [to] 'substitute [our] judgment on factual issues for that of the Board of Tax Appeals.' " (Second set of brackets sic.) *Health Care REIT* at ¶ 53 (lead opinion), quoting *Citizens Fin. Corp. v. Porterfield*, 25 Ohio St.2d 53, 57, 266 N.E.2d 828 (1971). For the reasons given, UTSI has not shown that the BTA abused its discretion in evaluating the evidence.

**D. The BTA justifiably excluded Fried's statements as hearsay**

**{¶ 32}** In its second proposition of law UTSI asserts that the BTA erred in applying the rules of hearsay to exclude Fried's statements that the sale was between related parties. These statements were based on Fried's conversation with

a person who never testified.[2]   Whether the sale was between related parties is important because one characteristic of an arm's-length transaction is that it occurs between "parties act[ing] in their own self-interest."  *Walters v. Knox Cty. Bd. of Revision*, 47 Ohio St.3d 23, 546 N.E.2d 932 (1989), syllabus.  "[T]he inquiry into whether 'the parties to a sale are related bears on whether they are self-interested for purposes of R.C. 5713.03.' "  *Hilliard City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 139 Ohio St.3d 1, 2014-Ohio-853, 9 N.E.3d 920, ¶ 31, quoting *N. Royalton City School Dist.*, 129 Ohio St.3d 172, 2011-Ohio-3092, 950 N.E.2d 955, at ¶ 33.

**{¶ 33}** To counter the BTA's hearsay ruling, UTSI makes an appeal to practicality, arguing that the very nature of an expert appraiser's job requires reliance on hearsay evidence.  Additionally, it cites *Buckeye Hospitality*, 146 Ohio St.3d 470, 2016-Ohio-757, 58 N.E.3d 1126, at ¶ 20, for the proposition that specific information in an appraisal report may be used to negate the presumptive arm's-length nature of a sale.

**{¶ 34}** "The rules of evidence, including the hearsay rule, do not control administrative hearings," *HealthSouth Corp.*, 132 Ohio St.3d 55, 2012-Ohio-1871, 969 N.E.2d 232, at ¶ 13; however, "an administrative tribunal such as the BOR or the BTA is justified in consulting the rules for guidance," *Plain Local Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 130 Ohio St.3d 230, 2011-Ohio-3362, 957 N.E.2d 268, ¶ 20.

**{¶ 35}** In *Almondtree Apts. of Columbus, Ltd. v. Franklin Cty. Bd. of Revision*, 10th Dist. Franklin No. 87AP-1216, 1988 WL 70505 (June 28, 1988), the court of appeals found that an appraiser's testimony that a sale was not at arm's

---

[2] UTSI asserts that the passage of time from when the deed was signed and notarized in September 2002 to when it was recorded in March 2009 provides further evidence that the sale was a transaction between related parties.  We reject this argument because it is not supported with citations to authority.  *See Richman Properties, L.L.C. v. Medina Cty. Bd of Revision*, 139 Ohio St.3d 549, 2014-Ohio-2439, 13 N.E.3d 1126, ¶ 27.

length constituted the "rankest type of hearsay." *Id.* at *3. The basis for the appraiser's testimony rested solely on conversations with the taxpayer's employees and a review of the sales contract and closing statement. No parties to the transaction testified, and the sales documents were not in the record. A virtually identical situation arose in *New Winchester Gardens v. Franklin Cty. Bd. of Revision*, 10th Dist. Franklin Nos. 89AP-72 and 89AP-73, 1989 WL 112349 (Sept. 28, 1989). In that case, an appraiser asserted that a sale was not at arm's length, but this assertion was not supported in the record by any sales documents, and no parties to the sale testified. Applying *Almondtree*, the court of appeals held that the appraiser's testimony was inadmissible hearsay. *Id.* at *2-3.

{¶ 36} Guided by this authority, we conclude that although the BTA was not *required* to do so, the BTA was *justified* in excluding Fried's statement that the sale was between related parties. *See Orange City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 74 Ohio St.3d 415, 416, 659 N.E.2d 1223 (1996) ("The BTA has discretion in admitting evidence"). The basis for Fried's statement rested solely on a conversation she had with an unnamed owner who did not testify before the BOR or the BTA. Had UTSI presented the owner as a witness, it is likely that this issue could have been avoided altogether. *See Gahanna Jefferson Pub. Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 10th Dist. Franklin No. 98AP-460, 1999 WL 1161, *5 (Dec. 31, 1998) (distinguishing *Almondtree*). Indeed, UTSI was on notice that this issue was looming given that the BOE raised its hearsay objection during the BOR proceedings. But UTSI evidently decided not to present the owner to testify during the BTA proceedings.

{¶ 37} This is not to deny as a general matter the force of UTSI's logic that an expert appraiser must at times rely on hearsay evidence to perform his or her job.[3] "Some hearsay evidence necessarily is always involved with expert

---

[3] UTSI cites Evid.R. 803(6), which, it insists, provides an "expert exception" to the hearsay rule. A more accurate description, however, is that Evid.R. 803(6) "recognizes a hearsay exception for

testimony.  To become an expert, one must read and learn from sources which are necessarily outside the evidence at trial.  It is this knowledge obtained from outside sources which qualifies a witness as an expert." *Worthington City Schools v. ABCO Insulation*, 84 Ohio App.3d 144, 152, 616 N.E.2d 550 (10th Dist.1992); *see also* 2 Gianelli, *Evidence*, Section 703.9, at 103-104 (3d Ed.2010) ("In one sense, most expert testimony is based, in part, on hearsay").

**{¶ 38}** But the BTA's hearsay determination does not throw these practical observations into doubt.  The scope of its ruling applies to the narrow class of cases in which an appraiser acts merely as a conduit of information concerning material facts about the subject property itself, namely, whether the property's sale was between related parties.  Whether the BTA would run afoul of the Rules of Evidence in excluding on hearsay grounds, say, an appraiser's reliance on market data prepared by a third party is something that can be addressed in a proper case. *See Buckeye Hospitality*, 146 Ohio St.3d 470, 2016-Ohio-757, 58 N.E.3d 1126, at ¶ 10-11 (noting appraiser's reliance on market data prepared by third parties).

**{¶ 39}** Lastly, UTSI's portrayal of *Buckeye Hospitality* as standing for the proposition that an appraisal report essentially enjoys a blanket exemption from the hearsay rule is incorrect.  The focal point in that case was on the probative value of the appraisal report, not on whether it constituted hearsay.

### E.  The BOE's motion to strike

**{¶ 40}** In its reply brief, UTSI adverts to a pair of Form 10-Ks for 2004 and 2009 to support its claim that the sale was between related parties.  According to UTSI, information contained in these filings establishes that Lakeshore Ventures and Universal Truckload Services had common corporate officers.  The filings were

---

records of regularly conducted business activities."  2 Gianelli, *Evidence*, Section 803.27, at 256 (3d Ed.2010).  Dispositive here is the fact that UTSI does not develop an argument with citations to authority showing how Evid.R. 803(6) applies under these facts. *See Richman Properties*, 139 Ohio St.3d 549, 2014-Ohio-2439, 13 N.E.3d 1126, at ¶ 27.  For similar reasons, UTSI's reliance on Evid.R. 703 in its reply brief is unavailing.

not presented below, thus UTSI requests that the court take judicial notice of the filings. The BOE objects and urges us to strike those portions of UTSI's reply brief discussing the filings.

**{¶ 41}** We generally strike evidence submitted by a party to a case here on appeal when the evidence was not submitted below. *Orange City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 152 Ohio St.3d 325, 2017-Ohio-8817, 96 N.E.3d 223, ¶ 11, fn. 3 (noting that we had granted a motion to strike evidence that had been submitted for the first time as an attachment to an appellate brief filed in this court). And we ordinarily do not regard judicial notice as furnishing an exception to this rule. *See AP Hotels of Illinois, Inc. v. Franklin Cty. Bd. of Revision*, 118 Ohio St.3d 343, 2008-Ohio-2565, 889 N.E.2d 115, ¶ 8, fn. 1. We see no reason to depart from these principles here, as UTSI has not identified a reason— let alone a compelling one—for why this information was not presented below. We accordingly grant the motion.[4]

### IV. CONCLUSION

**{¶ 42}** For the foregoing reasons, we affirm the BTA's decision and grant the BOE's motion to strike.

Decision affirmed.

O'CONNOR, C.J., and O'DONNELL and FISCHER, JJ., concur.

DEWINE, J., concurs in judgment only, with an opinion joined by KENNEDY and FRENCH, JJ.

DEGENARO, J., not participating.

_____

---

[4] We reject the BOE's contention that UTSI both waived and deprived this court of jurisdiction to consider the related-party argument insofar as it relates to the Form 10-K filings. UTSI averred that the sale was between related parties at the BOR, at the BTA, and in its notice of appeal to this court.

**DEWINE, J., concurring in judgment only.**

{¶ 43} I concur only in the court's judgment in this case. I diverge from the lead opinion because of its reliance on *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 124 Ohio St.3d 481, 2010-Ohio-687, 923 N.E.2d 1144—rather than our longstanding property-law jurisprudence—to determine when the sale of the property at issue occurred for purposes of R.C. 5713.03. I believe we should reexamine our holding in *HIN*.

{¶ 44} At the time pertinent to this case, R.C. 5713.03 read:

> In determining the true value of any * * * parcel of real estate under this section, if such * * * parcel has been the subject of an arm's length sale between a willing seller and a willing buyer *within a reasonable length of time, either before or after the tax lien date*, the auditor shall consider the sale price of such * * * parcel to be the true value for taxation purposes.

(Emphasis added.) Am.Sub.H.B. No. 260, 140 Ohio Laws, Part II, 2665, 2722.

{¶ 45} A central issue in this case is whether the sale of the subject property from Lakeshore Ventures, L.L.C. ("Lakeshore"), to Universal Truckload Services, Inc., occurred "within a reasonable length of time" of the tax-lien date. This necessarily requires a determination of when the sale occurred. In *HIN*, this court held that "[i]n determining the date a sale of property occurs, only for purposes of establishing the true value of property pursuant to R.C. 5713.03, the auditor should use the date that the real property conveyance-fee statement is filed in the auditor's office as the sale date of the property." *Id.* at paragraph two of the syllabus.

{¶ 46} That holding in *HIN* was not based on the plain language of R.C. 5713.03 or on property-law standards. Instead it was apparently created on the spot to establish two easy-to-pinpoint dates. In *HIN*, one issue was which of two sales

16

of the subject property that occurred close to the tax-lien date—one prior to the date and one after—should be used to determine value. This court held that the sale that occurred closest in time to the tax-lien date should be used. The second issue in *HIN* was which of the following dates should be considered the date of sale for taxation purposes: "the date on the purchase agreement, the date the deed was signed, the date of the closing, the date the real property conveyance-fee statement is filed in the auditor's office, or the date of recording the transfer of the property." *Id.*, 124 Ohio St.3d 481, 2010-Ohio-687, 923 N.E.2d 1144, at ¶ 2.

**{¶ 47}** Ultimately, the court decided that the date the conveyance-fee statement is filed with the auditor should be used as the date of the sale. And granted, that approach generated a date certain from which the proximity of the tax-lien date could easily be determined in that case. But the filing of a conveyance-fee statement doesn't consummate a sale; it relates to the auditor the details of a sale that has already happened. A sale is "[t]he transfer of property or title for a price," *Black's Law Dictionary* 1537 (10th Ed.2014), and although a conveyance-fee statement identifies the price, it does not establish when the transfer occurred. Ohio's property law does not use the filing date of a conveyance-fee statement to determine when a transfer of real property is complete. Instead, "[i]n Ohio, a deed does not have to be recorded to pass title. Whether or not recorded, a deed in Ohio passes title upon its proper execution and delivery, so far as the grantor is able to convey it." *Wayne Bldg. & Loan Co. of Wooster v. Yarborough*, 11 Ohio St.2d 195, 212, 228 N.E.2d 841 (1967). Thus, we should set the sale date as the date the executed deed was delivered to the grantee.

**{¶ 48}** Justice Lundberg Stratton wrote a concurrence in *HIN*, in which she correctly pointed to the lack of statutory support for using the conveyance-fee-statement filing date as the date of a sale and noted that a reliance on that date could obscure the true transfer date:

The General Assembly did not establish the date of the conveyance fee as the date of sale, and this court should not add such language to the statute. The parties should be allowed to present evidence at hearings before a board of revision and the Board of Tax Appeals to establish that the true date of sale is a different point from the date of the filing of the conveyance fee.

*Id.* at ¶ 32 (Lundberg Stratton, J., concurring).

{¶ 49} In contrast to the approach advocated by Justice Lundberg Stratton, we have read *HIN* to create a bright-line rule. In cases in which the record is not entirely clear about when the conveyance took place but the parties agree that the filing of the conveyance-fee statement took place close in time to the conveyance, *HIN* provides an easy-to-administer method for establishing a date of sale. We have followed that bright-line rule as recently as this year, *see Lone Star Steakhouse & Saloon of Ohio, Inc. v. Franklin Cty. Bd. of Revision*, __ Ohio St.3d __, 2018-Ohio-1612, __ N.E.3d __, ¶ 11, an opinion that I joined. But upon reflection, it is clear to me that this judge-made rule should not be allowed to trump the plain language of the statute, which mentions a recent "sale," not a recent conveyance-fee-statement filing. At most, the rule established in *HIN* should be considered a presumption that can be rebutted by evidence of a different sale date.

{¶ 50} It's likely that in most cases, the conveyance-fee statement will be filed a short time after the deed is executed and delivered to the grantee. But not every transfer of real property gets recorded right away, and this case demonstrates the potential problem with *HIN*'s court-created rule. Here, a quitclaim deed transferring the subject property from Lakeshore to Universal Truckload was executed on September 20, 2002, and was acknowledged by the grantor before a notary three days later. But the conveyance-fee statement was not filed until March 2009. Appellant, UTSI Finance, Inc. ("UTSI"), should have been able to submit

evidence that the actual sale of the property occurred closer to the date of the execution of the deed.

{¶ 51} It must be acknowledged that neither the board of revision nor the Board of Tax Appeals prevented UTSI from submitting evidence about the date of the sale. UTSI simply failed to submit evidence of when Universal Truckload received delivery of the deed in question. The date the deed was delivered was crucial in determining a sale date. "It is fundamental that, in order for a deed to be operative as a transfer of ownership of land or an interest or any estate therein, there must be a delivery of the instrument. It is the delivery that gives the instrument force and effect." *Kniebbe v. Wade*, 161 Ohio St. 294, 297, 118 N.E.2d 833 (1954). UTSI did not show when Universal Truckload received the deed from Lakeshore or explain why the seven-year gap occurred between the date UTSI alleges the sale occurred and the date the conveyance-fee statement was filed. Only in its reply brief before this court did UTSI point to records filed with the United States Securities and Exchange Commission that it asserts show that Lakeshore and Universal Truckload were related business entities with common ownership. Since it is "the general rule that there is a presumption of delivery arising from the possession of a deed by the named grantee," *Kniebbe* at 297, UTSI argues that common ownership of the companies should give rise to a presumption of possession and thus delivery. But I agree with the court's ruling striking that portion of UTSI's reply brief as a too-late attempt to submit evidence.

{¶ 52} Although UTSI failed to prove its assertion in this case, the facts asserted by UTSI demonstrate that in some cases, the true date of a sale could be far earlier—according to established property-law principles—than the date the conveyance-fee statement was filed. Because the lead opinion ignores the plain language of R.C. 5713.03 in favor of a court-written rule that can yield inaccurate conclusions in some situations, I concur in judgment only.

KENNEDY and FRENCH, JJ., concur in the foregoing opinion.

_____

Rich & Gillis Law Group, L.L.C., Mark Gillis, and Kimberly G. Allison, for appellee Hilliard City Schools Board of Education.

Vorys, Sater, Seymour & Pease, L.L.P., Karen H. Bauernschmidt, Nicholas Ray, and Heather M. Lutz, for appellant.

_____