[Cite as *MDC Coast I., L.L.C. v. Union Cty. Bd. of Revision*, 2020-Ohio-683.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

MDC Coast I, LLC,                                         :

      Appellant-Appellant,                      :               No. 18AP-721
                                                                               (BTA No. 2016-2088)
v.                                                                    :
                                                                               (REGULAR CALENDAR)
Union County Board of Revision et al.,          :

      Appellees-Appellees.                      :

---

D E C I S I O N

Rendered on February 27, 2020

---

**On brief:** *Frost Brown Todd, LLC, Yazan S. Ashrawi,* and *Frederick W. Kindel*, for appellant. **Argued:** *Yazan S. Ashrawi.*

**On brief:** *Rich & Gillis Law Group, Mark H. Gillis,* and *Richelle L. Thoburn Ford*, for appellee Marysville Exempted Village Schools. **Argued:** *Mark H. Gillis.*

---

APPEAL from the Ohio Board of Tax Appeals

KLATT, J.

{¶ 1} Appellant property owner, MDC Coast I, LLC, appeals a decision of the Ohio Board of Tax Appeals ("BTA") that affirmed the value the Union County Board of Revision ("BOR") assigned to the subject real property for tax year 2015. For the following reasons, we reverse that decision and remand this matter to the BTA.

{¶ 2} This appeal concerns the 2015-tax-year valuation of a 355,000 square foot office/warehouse facility located on 26.641 acres in Marysville, Ohio. The building was constructed in 2014 pursuant to a build-to-suit lease agreement between Sumitomo Electric Wiring Systems, Inc., the tenant-client, and a landlord-developer. The cost of

constructing the building, including the cost of purchasing the land, amounted to approximately $13.5 million.

{¶ 3} In October 2014, construction was completed, and the initial lease term began. Under the lease, Sumitomo agreed to an initial ten-year term, followed by two optional five-year terms. Sumitomo also agreed to a net lease term, meaning that it would pay for the property's real estate taxes, property insurance, utilities, and maintenance.

{¶ 4} In December 2015, the developer sold the property to MDC for $19 million. Appellee, the Marysville Exempted Village Schools Board of Education ("Board"), then filed a complaint with the BOR seeking to increase the subject property's true value for tax year 2015 to $19 million. At the BOR hearing, the Board argued that the 2015 sale price constituted the best evidence of the true value of the property on the tax-lien date, i.e., January 1, 2015. MDC offered evidence to rebut the Board's argument. MDC presented the testimony of William Lefebvre, general manager of Sumitomo's contracts and compliance department, and Robert Weiler, an Ohio certified appraiser who appraised the subject property. MDC also introduced into evidence the lease between Sumitomo and MDC, as well as an appraisal Weiler completed. Weiler testified that the market value of the unencumbered, fee-simple estate as of January 1, 2015 was $13.5 million.

{¶ 5} In a decision issued September 29, 2016, the BOR assessed the true value of the subject property for tax year 2015 at $19 million. MDC appealed that decision to the BTA. At a hearing, MDC again presented the testimony of Lefebvre and Weiler, as well as an appraisal of the property that Weiler completed. The BTA entered a decision on August 24, 2018 that determined the true value of the subject property for tax year 2015 was $19 million.

{¶ 6} MDC now appeals the BTA's August 24, 2018 decision to this court, and it assigns the following errors:

> [1.] The Ohio Board of Tax Appeals committed an error of law by relying on *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 146 Ohio St.3d 470, 2016-Ohio-757 – which has been superseded by statute and case law – in requiring MDC Coast I, LLC to rebut some aspect of the sale before it properly considered appraisal evidence.
>
> [2.] The Ohio Board of Tax Appeals committed an error of law by failing to give full consideration of the non-sale appraisal

evidence as required by *Terraza 8, L.L.C. v. Franklin Cty. Bd. of Revision*, 150 Ohio St.3d 527, 2017-Ohio-4415, 83 N.E.3d 916 (2017) and its progeny.

[3.] The Ohio Board of Tax Appeals erred in determining that the purchase price of $19 million represented the market value of the subject property for tax purposes because it did not consider that the property was subject to a long-term net lease by a creditworthy tenant.

{¶ 7} An appellate court will affirm a BTA decision if it is reasonable and lawful, and reverse, vacate, or modify the decision if it is unreasonable or unlawful. R.C. 5717.04. In reviewing a BTA decision, an appellate court considers legal issues de novo. *Notestine Manor, Inc. v. Logan Cty. Bd. of Revision*, 152 Ohio St.3d 439, 2018-Ohio-2, ¶ 13. An appellate court will defer to the BTA's findings concerning the weight of the evidence as long as the record supports those findings. *Terraza 8, LLC v. Franklin Cty. Bd. of Revision*, 150 Ohio St.3d 527, 2017-Ohio-527, ¶ 7.

{¶ 8} By its first two assignments of error, MDC argues that the trial court applied an outdated legal analysis to determine the true value of the subject property. R.C. 5713.03 governs how the true value of real property is determined. In 2012, the General Assembly significantly changed the language of R.C. 5713.03. First, the General Assembly required a tax assessor to determine not just "the true value" of property, but "the true value of the fee simple estate, as if unencumbered." 2012 Am.Sub.H.B. No. 487. Second, the General Assembly replaced "shall" with "may," so the statute now reads, a tax assessor "*may* consider the sale price * * * to be the true value for taxation purposes." (Emphasis added.) *Id.*

{¶ 9} These two statutory amendments overrode *Berea City School Dist. Bd. of Edn. v. Cuyahoga Bd. of Revision*, 106 Ohio St.3d 269, 2005-Ohio-4979, under which a voluntary, recent arm's-length sale absolutely and irrefutably determined true value for tax purposes. *Terraza 8* at ¶ 26, 30. "At the very heart of *Berea* [was] the rejection of appraisal evidence of the value of the property whenever a recent, arm's-length sale [was] offered as evidence of value." *Cummins Property Servs., LLC v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, ¶ 13. Amended R.C. 5713.03, however, restored evidentiary value to non-sale-price evidence as proof of true value, even if a property has been the subject of a voluntary, recent arm's-length sale. *Terraza 8* at ¶ 27. Now, under

the statutory amendments to R.C. 5713.03, the sale price from a voluntary, recent arm's-length sale of encumbered property is presumptive—not conclusive—evidence of the value of the unencumbered fee-simple estate. *Notestine Manor* at ¶ 26; *Spirit Master Funding IX, LLC v. Cuyahoga Cty. Bd. of Revision*, 155 Ohio St.3d 254, 2018-Ohio-4302, ¶ 6. The rebuttable nature of the presumption opens the door to consideration of appraisal evidence (and other non-sale-price evidence) of the property's unencumbered value. *Notestine Manor* at ¶ 26.

{¶ 10} Under amended R.C. 5713.03, appraisal evidence is equally admissible and competent as sale price evidence in proving a property's value. *GC Net Lease @ (3) (Westerville) Investors, LLC v. Franklin Cty. Bd. of Revision*, 154 Ohio St.3d 121, 2018-Ohio-3856, ¶ 11; *Westerville City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 154 Ohio St.3d 308, 2018-Ohio-2855, ¶ 14, 16. The proponent of appraisal evidence need not make any threshold showing before a taxing authority must fully consider that evidence. *Westerville City Schools* at ¶ 14. Once a party introduces appraisal evidence, the taxing authority has to consider that appraisal in its totality to determine whether it or the sale price more accurately values the property. *Id.*; *Spirit Master* at ¶ 6, 9; *Menlo Realty Income Properties 28, LLC v. Franklin Cty. Bd. of Revision*, 10th Dist. No. 19AP-316, 2019-Ohio-4872, ¶ 5-6.

{¶ 11} Rebuttal of the sale-price-as-best-evidence presumption occurs if the opponent of the sale price proves that an existing lease affected the sale price. In other words, the opponent of the sale price may rebut the presumption by demonstrating that the buyer of the property paid more for the property because the property was under lease. *See Menlo Realty* at ¶ 16 ("The point of Ohio's statutory scheme is to endeavor to separate out, where possible, value attributable to having the lease itself (value not subject to the property tax) and value attributable to the 'fee simple estate, as if unencumbered' (value that is subject to the property tax.)".). Factors impacting the amount a buyer will pay to own a leased property include: (1) the amount of rent charged under the lease in comparison to market rent, (2) the creditworthiness of the tenant, and (3) whether the lease is a net lease, under which the tenant defrays expenses related to the property. *GC Net Lease* at ¶ 10; *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 10th Dist. No. 19AP-204, 2020-Ohio-200, ¶ 13 (hereinafter "*JDM II SF Natl. LLC*"). "The convergence of these

circumstances could affect the price a buyer would pay for the property, possibly elevating it above what the same buyer would pay for the unencumbered fee-simple estate." *GC Net Lease* at ¶ 10.

{¶ 12} By its first assignment of error, MDC argues that the BTA erred by requiring it to rebut some aspect of the sale before the BTA would fully consider MDC's appraisal evidence. We agree.

{¶ 13} In the challenged portion of the decision, the BTA stated:

> The [Supreme Court of Ohio] has held that while an appraiser's sworn statements and report may be relied upon to rebut the presumptive validity of a sale, "the mere fact that an expert has opined a different value should not be deemed sufficient to undermine the validity of the sale price as the property value." *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 146 Ohio St.3d 470, 2016-Ohio-757, ¶20. Thus, before we can consider Weiler's ultimate conclusion of value, we must first find that MDC has rebutted some aspect of the sale.

(Aug. 24, 2018 BTA Decision at 3.) At the end of its decision, the BTA found that MDC had not rebutted some aspect of the sale, so the BTA did not consider the appraiser's ultimate conclusion of value or, for that matter, the entirety of the appraisal.

{¶ 14} As we recently pointed out in *JDM II SF Natl. LLC*, *Columbus City Schools* applied the version of R.C. 5713.03 that pre-dated the 2012 statutory amendments. *JDM II SF Natl. LLC* at ¶ 22. In *Columbus City Schools*, the Supreme Court of Ohio explained that an expert's opinion of value could not undermine the validity of a sale price because "[t]hat would, of course, violate the *Berea* precept." *Columbus City Schools* at ¶ 20. The precept the court referred to was *Berea*'s "rejection of appraisal evidence of the value of the property whenever a recent, arm's-length sale price has been offered as evidence of value." *Cummins* at ¶ 13. *Terraza 8*, however, overrode *Berea*'s rejection of appraisal evidence. Now, under amended R.C. 5713.03, "the General Assembly has directed taxing authorities to consider not just the sale price but also any other evidence the parties present that is relevant to the value of the unencumbered fee-simple estate." *Bronx Park S. III Lancaster, LLC v. Fairfield Cty. Bd. of Revision*, 153 Ohio St.3d 550, 2018-Ohio-1589, ¶ 12.

{¶ 15} Because the BTA relied on outdated precedent, it erred in concluding that it had to find MDC rebutted some aspect of the sale before it could fully consider the

appraiser's opinion regarding the property's value.  When the General Assembly amended R.C. 5713.03, it opened the door to the consideration of evidence other than sale price by allowing that a tax assessor "may"—instead of "shall"—consider the sale price to be the true value of the property.  *Terraza 8* at ¶ 27.  By changing "shall" to "may," R.C. 5713.03 "establish[es] that appraisal evidence is admissible and competent evidence of value alongside a sale price and that the fact-finder has a duty to consider whether the appraisal constitutes a more accurate valuation of the property than the sale price."  *Westerville City Schools* at ¶ 14.  Consequently, the proponent of appraisal evidence need not impugn the sale in some way before a tax tribunal has an obligation to fully consider the appraisal evidence.  *Id.*  Only after reviewing the entire appraisal alongside evidence of a sale price may a fact finder determine whether a party has rebutted the sale-price-as-best-evidence presumption.

{¶ 16}  Here, the BTA never considered the appraiser's ultimate conclusion of value because it found MDC had not rebutted an aspect of the sale.  This was error.  Accordingly, we sustain MDC's first assignment of error.

{¶ 17}  By its second assignment of error, MDC argues that the BTA erred in failing to consider all its non-sale-price evidence.  We agree.

{¶ 18}  Both in his report and testimony, Weiler, MDC's appraiser, opined that the sale price did not constitute the true value of the subject property.  Before the BTA, MDC's attorney and Weiler engaged in the following colloquy:

> Q: Do you believe that the $19 million sale of the property represents its market value or its true value for property tax purposes?
>
> A: No, it doesn't.
>
> Q: Any why not?
>
> A: It represents the value of the creditworthiness and strength of the tenant upon which the purchase price was based.  It does not in my judgment represent what the value of the property is worth if it were sold unencumbered on the open market.

(Tr. at 18.)  In his report, Weiler stated:

> The above $19,000,000 figure is not reflective of the market value as of 1/1/2015. * * * This leased fee is the investment value

of a totally net income stream, analogous to a bonded lease since the tenant [has] highly rated credit [thus] securing the lease payments. Therefore, as discussed within this report, the market value is supported by an income approach with comparable market rents substantially below that which would be calculated from the net lease amount. In short, the current lease is not supported by market rents. The appropriate methodology would be to use market rents which are shown in the income approach as well as comparable sales of properties similar to the subject. Again, the cost approach is a very reliable method and all of these approaches indicate a value ranging from $13,000,000 to $14,000,000.

(Feb. 16, 2017 Appraisal at 9.)

{¶ 19} The BTA disregarded Weiler's opinion, primarily because the BTA disagreed with Weiler's conclusion that Sumitomo was paying above-market rent. Problematically, however, the BTA excluded relevant evidence from its analysis of whether the appraisal or sale price more accurately valued the subject property. In determining whether an existing lease affected the sale price, a tax tribunal must consider: (1) the amount of rent charged under the lease in comparison to market rent, (2) the creditworthiness of the tenant, and (3) whether the lease is a net lease. *GC Net Lease* at ¶ 10; *JDM II SF Natl. LLC* at ¶ 13. Here, the appraisal referred to Sumitomo as "an AAA-credit tenant" and as having "highly rated credit." (Appraisal at 9.) The BTA did not consider Sumitomo's creditworthiness. The BTA also overlooked Section 3.02 of the lease, which provides "this Lease is a net Lease, it being the intention of the parties hereto that Tenant shall pay as additional rent, all expenses incurred by Landlord in owning and operating the Leased Premises as provided herein." (Dec. 20, 2013 Lease at Section 3.02.)

{¶ 20} Additionally, the BTA ignored any evidence that cut against its rejection of Weiler's supplementary opinion that the cost of development manifested the property's true value. Weiler explained that the cost approach accurately measured the property's market value given that construction was completed only two months prior to the tax-lien date. In rejecting Weiler's opinion, the BTA pointed out that the actual budgeted cost of developing the facility included "fees," but no entrepreneurial profit for the developer. The BTA concluded that the difference between the $19 million sale price and the $13.5 million development costs—approximately $5.5 million—constituted the entrepreneurial profit missing from the budgeted development costs. To reach this conclusion, the BTA ignored

Weiler's calculation of the property value using the cost approach with data from the Marshall Valuation Service, which resulted in a valuation of $14,035,000. That calculation included a line item for developer's profit of approximately $1 million dollars, or approximately 8 percent of the estimated cost of construction. The BTA also failed to factor into its decision Weiler's testimony before the BOR that the developer's entrepreneurial profit certainly would not be in the range of $6 million, i.e., approximately 40 percent of the $13.5 million project.

{¶ 21} In addition to not considering all evidence from the appraiser, the BTA also ignored evidence from Lefebvre, the general manager of Sumitomo's contracts and compliance department. Lefebvre confirmed that the total construction costs, including the cost of purchasing the land, were approximately $13.5 million. Lefebvre also explained that the developer constructed the facility under a build-to-suit lease agreement. In a build-to-suit situation:

> [T]he owner builds a structure to the tenant's specifications and then enjoys the benefit of rent under a long-term lease that provides the owner with recovery of the costs of construction and a profit. Alternatively, the owner can turn around and sell the property, and the price the property commands will be enhanced by the anticipated revenue stream from the lease.

*Meijer Stores Ltd. Partnership v. Franklin Cty. Bd. of Revision*, 122 Ohio St.3d 447, 2009-Ohio-3479, ¶ 22. Moreover, Lefebvre testified that the desire to get the facility built expeditiously resulted in Sumitomo agreeing to above-market lease rates.

{¶ 22} In sum, we agree that the BTA erred in failing to address all relevant non-sale-price evidence. Accordingly, we sustain MDC's second assignment of error.

{¶ 23} By its third assignment of error, MDC argues that MDC erred in determining the true value of the subject property for tax year 2015 was $19 million. Given that we have sustained MDC's first and second assignments of error, we must vacate the BTA's decision and remand for the BTA to properly address and weigh the evidence. Accordingly, we cannot now review a challenge to the weight of the evidence, and thus we find the third assignment of error moot.

{¶ 24} For the foregoing reasons, we sustain the first and second assignments of error, which moots the third assignment of error. We vacate the decision of the Board of

Tax Appeals, and we remand this matter to it for further proceedings consistent with law and this decision.

*Decision vacated; cause remanded.*

BEATTY BLUNT  and NELSON, JJ., concur.

———————————