[Cite as *Sheffield Crossing Station, L.L.C. v. Lorain Cty. Bd. of Revision*, 2020-Ohio-6938.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Sheffield Crossing Station, L.L.C., | : | |
| Appellant-Appellant, | : | No. 19AP-687 |
| v. | : | (B.T.A. No. 2018-926) |
| Lorain County Board of Revision et al., | : | (REGULAR CALENDAR) |
| Appellees-Appellees. | : | |

D E C I S I O N

Rendered on December 29, 2020

**On brief:** *The Gibbs Firm, LPA, Ryan J. Gibbs,* and *Geoffrey N. Byrne,* for appellant *Sheffield Crossing Station, L.L.C.* **Argued:** *Geoffrey N. Byrne.*

**On brief:** *Pepple & Waggoner, Ltd., and Christian M. Williams*, for appellees *Sheffield-Sheffield Lake City School District Board of Education.* **Argued:** *Christian M. Williams.*

**On brief:** *Dennis P. Will*, Lorian County Prosecuting Attorney, and *Cara M. Finnegan*, for appellees *Lorian County Board of Revision* and *Lorian County Auditor.* **Argued:** *Cara M. Finnegan.*

APPEAL from the Ohio Board of Tax Appeals

BEATTY BLUNT, J.

{¶ 1} Appellant Sheffield Crossing Station, L.L.C., appeals the September 10, 2019 decision of the Ohio Board of Tax Appeals ("BTA") valuing the subject property, a shopping mall consisting of ten combined tax parcels with an anchor tenant of Giant Eagle, for tax year 2017 at the December 23, 2015 purchase price of $16,095,000. The BTA's opinion neatly summarizes the facts and proceedings in this case:

The subject property is a shopping center anchored by a Giant Eagle. The subject sold on December 23, 2015 for $16,095,000. The record shows a company called Sheffield Ridge Equities LLC sold the subject property—ten parcels in total—to Sheffield Crossing via limited warranty deed, and the deed was recorded on December 23, 2015. The parcel card confirms general sale information, including a sale price of $16,095,000. The parties do not dispute the sale date or sale price.

The auditor valued the subject property at approximately $13,693,350 for tax year 2017. Sheffield Crossing filed a decrease complaint with an opinion of value at $11,950,000, and the appellee school board filed a counter-complaint asking the subject to be valued in accordance with the December 2015 sale. Sheffield Crossing did not appear at the BOR hearing but did submit an appraisal developed by Richard G. Racek, Jr., MAI, which valued the property at $11,950,000 as of January 1, 2015. The school board objected to the appraisal since the appraisal was for a different tax-lien date and because Mr. Racek did not appear to authenticate the appraisal. The school board instead relied on the information contained in the sale documents and asked the BOR to value the subject in accordance with the sale. The BOR agreed with the school board and ultimately did value the subject in accordance with the sale.

Sheffield Crossing appealed to [the BTA]. At [the BTA's] evidentiary hearing, Sheffield Crossing offered the appraisal and testimony of Mr. Racek who valued the subject (in a new appraisal) at $11,250,000 as of January 1, 2017. The BOR offered the appraisal and testimony of Thomas D. Sprout, MAI, who valued the subject at $17,655,000 as of January 1, 2017. No party offered testimony from a person with actual knowledge of the December 2015 sale.

Mr. Racek valued the subject [property] at $11,250,000 using the sales comparison and income capitalization approach * * *. [He concluded a sales comparison] value of $100 per square foot or $11,368,800 * * *. Capitalized at 8%, Mr. Racek's income approach came to $11,150,000 rounded. He reconciled both approaches to a value of $11,250,000 as of the tax-lien date.

Mr. Sprout valued the subject at a combined $17,655,000 using the sales comparison and income capitalization approaches. For his sales comparison approach, Mr. Sprout segregated the shopping center into smaller subunits, e.g., the anchor, the in-line retail space, a Cracker Barrel, an Arby's, a BP, an auto

service garage. He then compared each subunit using comparable properties. He followed a similar method in his income approach and reconciled each individually.

* * *

[W]e find no credible evidence to show the December 2015 sale was anything but arm's-length. Although the subject was allegedly sold as part of a portfolio sale, no party presented evidence from any person with actual knowledge of the sale; therefore, the sale created a rebuttable presumption of value in favor of the sale price. Second, while Sheffield Crossing argues the sale should be rejected because the sale was for a fee simple estate subject to an existing lease, the record is clear the sale price and existing lease rates were in line with market rates. As we noted recently * * * a fee simple sale subject to a lease does not disqualify a sale unless the lease is above market.

Ultimately, this case boils down to the fact that the sale is more persuasive evidence of value. * * * The appraisal process requires a wide variety of subjective judgments about underlying data. Here, two MAI appraisers developed very different appraisals using different methodologies. One came to an opinion of value below the sale. One came to an opinion of value above the sale. However, both appraisals contain raw data that suggests to [the BTA] that the sale was in accord with the market.

We are further compelled to find the sale is the best evidence of value because both appraisals have features that make them less persuasive than the sale. For example, Mr. Racek valued the property using a definition of encumbrance that this board and the Ohio Supreme Court have rejected. Sheffield Crossing argues R.C. 5713.03 required Mr. Racek "to value the property not as if it were leased as of January 1, 2017, but as if the property were available to be leased on that date. As [the BTA] noted * * * the Ohio Supreme Court rejected such [an] argument in *Harrah's Ohio Acquisition Co, LLC v. Cuyahoga Cty. Bd. of Revision,* 154 Ohio St.3d 340, 2018-Ohio-4370.

(Decision at 2-6.)

{¶ 2} In accordance with its rejection of the appraisals, the BTA adopted the 2015 sale price as the true value of the property for tax year 2017. Sheffield Crossing Station appeals to this court, and asserts 14 assignments of error with that decision:

[I.] The Board of Tax Appeals erred by adopting the recent sale price of a leased-encumbered property as the value for tax

purposes when the record contained competent and probative appraisal evidence of the subject property's unencumbered value.

[II.] The Board of Tax Appeals erred as a matter of law when it determined that the recent lease-encumbered sale price remained the "best evidence" of value despite being affirmatively rebutted by unencumbered appraisal evidence.

[III.] The Board of Tax Appeals erred when it found that a sale is the best evidence of value when its leases are "at market" despite this premise being explicitly rejected by the Ohio Supreme Court in *Terraza 8, L.L.C. v. Franklin County Board of Revision*, 83 N.E.3d 916, 150 Ohio St.3d 527, 2017-Ohio-4415.

[IV.] The Board of Tax Appeals erred as a matter of law when it held that the proper value standard in Ohio is "fee simple sale subject to a lease" at market when R.C. 5713.03 explicitly states that property must be valued "as if unencumbered."

[V.] The Board of Tax Appeals erred as a matter of law when it adopted a lease-encumbered sale price, without any adjustment, when the Ohio Supreme Court has previously stated that R.C. 5713.03 demands valuation "free of encumbrances such as leases."

[VI.] The Board of Tax Appeals erred by deviating from the plain meaning of a clear and unambiguous statute.

[VII.] The Board of Tax Appeals erred as [a] matter of law when it found that the fact that the recent sale of the subject property was "market driven" overrode the requirement that only the subject property's unencumbered value be taxed under R.C. 5713.03.

[VIII.] The Board of Tax Appeals' use of appraiser Thomas Sprout's lease comparables for the subject property's anchor space as support for adopting the sale price is an unconscionable abuse of discretion as each of the leases were signed more than a decade prior to the tax lien date. The Board has previously rejected this same approach from Mr. Sprout in *Lowe's Home Centers, LLC v. Lorain Cty. Bd. of Revision*, BTA No. 2017-1023 (August 12, 2019) & *Lowe's Home Centers, LLC v. Lorain Cty. Bd. of Revision*, BTA No. 2017-1135 (August 21, 2019). This treatment by the Board is violative of the Equal Protection and uniform assessment requirements set forth in Errors 12 and 13 herein.

[IX.] The Board of Tax Appeals erred as a matter of law when it rejected Appellant's argument that R.C. 5713.03 requires valuation "as if available to be leased" rather than "as if it were leased as of January 1, 2017," and in its misstatement of the Ohio Supreme Court's decision *Harrah's Ohio Acquisition Co., LLC v. Cuyahoga Cty. Bd. of Revision*, 154 Ohio St.3d 340, 2018-Ohio-4370 to support this rejection.

[X.] The Board of Tax Appeals' rejection of Mr. Racek's definition of "encumbrance" is wholly unsupported by the record and is in active defiance of the Ohio Supreme Court's holdings in *Lowe's Home Centers, Inc. v. Washington County Bd. of Revision*, 116 N.E.3d 79, 154 Ohio St.3d 463, 2018-Ohio-1974 and *Harrah's Ohio Acquisition Co., LLC v. Cuyahoga Cty. Bd. of Revision*, 154 Ohio St.3d 340, 2018-Ohio-4370.

[XI.] The Board of Tax Appeals erred by failing to independently determine the unencumbered value of the subject property using the unencumbered data in the record.

[XII.] The Board of Tax Appeals decision violates the separation of powers implied by the Ohio Constitution in Articles II, III and IV and the United States Constitution.

[XIII.] The Board of Tax Appeals' decision and order violates the Ohio Constitution's mandate of uniform assessment. Article XII, Section 2.

[XIV.] The Board of Tax Appeals' decision and order violates the Equal Protection clauses under Article I, Section 2 of the Ohio State Constitution and the Fourteenth Amendment of the United States Constitution by applying the definition of fee simple, as if unencumbered, and interpreting §5713.03 of the Ohio Revised Code, in a manner that discriminates against certain taxpayers.

As these assignments of error are all related, we will address them together.

{¶ 3} Our review of the BTA's decision is governed by R.C. 5714.04, which provides:

Appeals from decisions of the board upon all other appeals or applications filed with and determined by the board [including decisions from a county board of revision] shall be by appeal to the court of appeals for the county in which the property taxed is situation or in which the taxpayer resides * * *. If upon hearing and consideration of such records the court decides that the decision of [the BTA] is reasonable and lawful it shall affirm the same, but if the court decides that such decision of the board is unreasonable or unlawful, the court shall reverse

and vacate the decision or modify it and enter final judgment in accordance with such modification.

Accordingly, "[w]hen reviewing a BTA decision, we determine whether the decision is reasonable and lawful; if it is both, we must affirm." *NWD 300 Spring L.L.C. v. Franklin Cty. Bd. of Revision*, 151 Ohio St.3d 193, 2017-Ohio-7579, ¶ 13 (citing statute). *See also MDC Coast I, L.L.C. v. Union Cty. Bd. of Revision*, 10th Dist. No. 18AP-721, 2020-Ohio-683, ¶ 7. Appellate review of BTA decisions "is guided by the premise that '[t]he fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities.' " (Other citation omitted.) *NWD 300 Spring* at ¶ 13, quoting *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, ¶ 17. The BTA's factual findings are entitled to deference as long as they are supported by reliable and probative evidence in the record. *Bd. of Edn. of the Westerville City Schools v. Franklin Cty Bd. of Revision,* 146 Ohio St.3d 412, 2016-Ohio-1506, ¶ 26. Furthermore, "[t]he standard for reviewing the BTA's determination of the credibility of witnesses and the weight to be given their testimony is abuse of discretion." *NWD 300 Spring* at ¶ 14. Thus, where the parties present competing appraisals, the BTA is vested with wide discretion in determining credibility of the witnesses and weighing the evidence before it. *Bd. of Edn. of the Westerville City Schools* at ¶ 21 and *NWD 300 Spring* at ¶ 13. The BTA's decision finding one appraisal more probative than another appraisal and adopting a land value in one appraisal over the land value in another appraisal is reviewed for an abuse of discretion. *Id.* at ¶ 16. " 'Abuse of discretion connotes an unreasonable, arbitrary, or unconscionable attitude.' " *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, 153 Ohio St.3d 241, 2017-Ohio-8385, ¶ 7, quoting *Renacci v. Testa, Tax Commr.*, 148 Ohio St.3d 470, 2016-Ohio-3394, ¶ 32. And although the BTA is responsible for determining factual issues, this court will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion. *Bd. of Edn. of the Westerville City Schools* at ¶ 21. We review questions of law de novo. *See Terraza 8, L.L.C. v. Franklin Cty. Bd. of Revision*, 150 Ohio St.3d 527, 2017-Ohio-4415, ¶ 7, and *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 151 Ohio St.3d 12, 2017-Ohio-2734, ¶ 13. *See also MDC Coast I, L.L.C.* at ¶ 7.

{¶ 4} Like other recent decisions of this court, *see, e.g., MDC Coast I, L.L.C.* at ¶ 9-16, and *Lowe's Home Ctrs., L.L.C. v. Brooklyn City Sch. Dist. Bd. of Edn.,* 10th Dist. No.

19AP-179, 2020-Ohio-464, ¶ 21-27, this valuation dispute revolves around the 2012 amendment to R.C. 5713.03. Prior to this amendment, a recent arm's-length sale was deemed to create an irrebuttable presumption of true value. *See generally Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 269, 2005-Ohio-4979. But in 2012, the legislature overrode *Berea City,* and specifically the three words "as if unencumbered." The statute now provides:

> The county auditor, from the best sources of information available, shall determine, as nearly as practicable, the true value of the fee simple estate, *as if unencumbered* but subject to any effects from the exercise of police powers or from other governmental actions, of each separate tract, lot, or parcel of real property and of buildings, structures, and improvements located thereon * * *. In determining the true value of any tract, lot, or parcel of real estate under this section, if such tract, lot, or parcel has been the subject of an arm's length sale between a willing seller and a willing buyer within a reasonable length of time, either before or after the tax lien date, the auditor may consider the sale price of such tract, lot, or parcel to be the true value for taxation purposes. However, the sale price in an arm's length transaction between a willing seller and a willing buyer shall not be considered the true value of the property sold if subsequent to the sale: (A) The tract, lot, or parcel of real estate loses value due to some casualty; (B) An improvement is added to the property.

(Emphasis sic.)  R.C. 5713.03.

{¶ 5}    In *Terraza 8*, the Supreme Court concluded that the 2012 amendment to the statute had the effect of legislatively overruling *Berea*, and held that "a recent arm's-length sale price is not conclusive evidence of the true value of property under R.C. 5713.03 as amended by H.B. 487."  *Id.* at ¶ 30.  The court went on to observe that while "sale price * * * is the best evidence of the property's true value, subject to rebuttal * * *  Market rent becomes relevant only if an opponent presents it as evidence in an attempt to rebut a sale price."  *Id.* at ¶ 34.

{¶ 6}    The court further explained the amendment in *Harrah's Ohio Acquisition Co., L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 154 Ohio St.3d 340, 2018-Ohio-4370, in which it held that the BTA had wrongly refused to consider an appraisal that valued owner-occupied property as if it had been leased. The court observed that it had previously approved that technique:

> After recognizing that a property owner may be able to realize the value of its property by encumbering it with a lease, we concluded that an appraiser may take that possibility into account when valuing it. Appraising property in this way is consistent with R.C. 5713.03's directive to determine "the true value of the fee simple estate, as if unencumbered," so long as the appraisal assumes a lease that reflects the relevant real-estate market.

(Citations omitted.) *Id.* at ¶ 27. In other words, the court has held that the phrase "as if unencumbered," means that if the subject property is encumbered, an appraisal should adjust for the effects of those encumbrances. Such adjustments account for market rent and occupancy levels, and not simply to simulate vacancy. *See, e.g.*, *Lowe's Home Ctrs.* at ¶ 22. Moreover, "[t]he proponent of appraisal evidence need not make any threshold showing before a taxing authority must fully consider that evidence. Once a party introduces appraisal evidence, the taxing authority has to consider that appraisal in its totality to determine whether it or the sale price more accurately values the property." *MDC Coast I* at ¶ 10, citing *Spirit Master Funding IX, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 155 Ohio St.3d 254, 2018-Ohio-4302, ¶ 6, *Westerville City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 154 Ohio St.3d 308, 2018-Ohio-2855, ¶ 14, and *Menlo Realty Income Props. 26, L.L.C. v. Franklin Cty. Bd. of Revision*, 10th Dist. No. 19AP-316, 2019-Ohio-4872, ¶ 5-6.

{¶ 7} And here, the BTA's opinion did not "fully consider" the merits of either appraisal. Instead, it concluded that "the sale price was market driven," and that "both appraisals contain raw data that suggests to this board that the sale was in accord with the market," and treated that sale price as the de facto value of the property. (*See* Decision at 5-6.) Moreover, the BTA discarded the estimated value provided by Sheffield Crossing's appraiser Richard Racek because it disagreed with his appraisal's underlying assumption—that the property should be valued as unoccupied and available to lease. But given that the use of this underlying assumption is explicitly permitted by *Harrah's* and *Terraza 8*, the BTA's rejection of the appraisal is tantamount to ignoring it as legally incorrect rather than fully analyzing the claims of valuation made therein. While BTA explains its rejection of the Sheffield Crossing appraisal value as "less persuasive than the sale," it gives no basis for its rejection other than the appraiser's underlying claim that "R.C. 5713.03 required [him] 'to

value the property not as if it were leased as of January 1, 2017, but as if the property were available to be leased on that date.' " (Decision at 5-6.)

{¶ 8}    And appraisal evidence using the value of the property as available to be leased can be (under the statute as amended) just as relevant to the true value of the property as the sale price is. The Supreme Court of Ohio has specifically reversed and described as "legal error" the BTA's decision to refuse to consider an appraisal assuming a lease at market rate, as "[a]ppraising property in this way is consistent with R.C. 5713.03 directive to determine 'the true value of the fee simple estate, as if unencumbered,' so long as the appraisal assumes a lease that reflects the relevant real-estate market." *Harrah's* at ¶ 27, quoted in *Lowe's Home Ctrs.* at ¶ 22. Racek's appraisal specifically valued the property as if it was available for lease for the tax year at issue, and the BTA's decision does not challenge his analysis of the relevant real-estate market and lease rates. Without more, it was legal error for the BTA to discard Racek's appraisal, and that action undermines the entire foundations of its decision to adopt the sale price as evidence of true value.

{¶ 9}    Accordingly, we sustain Sheffield Crossing's first, second, third, fourth, fifth, seventh, ninth, tenth, and eleventh assignments of error. Its sixth, eighth, twelfth, thirteenth, and fourteenth assignments of error are moot and we decline to address them. The decision the Ohio Board of Tax Appeals is hereby reversed and this cause is remanded to that body for further proceedings in accordance with this opinion.

*Decision reversed and remanded.*

KLATT and NELSON, JJ., concur.